## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

IN RE:                                          In Proceedings
                                                Under Chapter 7
WILLIAM TODD STEINER

                                                Case No. 19-60062
            Debtor(s).

## OPINION

This case presents the issue of whether, for purposes of a motion to dismiss pursuant to

11 U.S.C. § 707(b)(1), a debtor's student loan obligations must be characterized as "consumer

debt."

## FACTS

The relevant facts have been stipulated to in the Joint Stipulation of Facts filed on August

16, 2019 ("Joint Stipulation") and are not in dispute.  William Steiner ("Debtor") filed his

voluntary Chapter 7 petition on February 26, 2019. He scheduled $37,727.19 in non-priority

unsecured debt, including $11,500.00 in student loans owed to the United States Department of

Education (*See* Sch. E/F). These loans were incurred as a result of the Debtor's attendance at

Hannibal-LaGrange College at Hannibal, Missouri ("HLC") from 1982 to 1983 and Southern

Illinois University at Edwardsville ("SIUE") from 1989 to 1991.

In addition to his non-priority, unsecured debt, the Debtor also scheduled $33,500.00 in

unsecured, priority tax debt (*See* Sch. E/F) and $17,323.00 in non-priority secured debt (*See* Sch.

D) for total debt of $88,550.19. At page 6, Question 16 of his voluntary petition, the Debtor

affirmed under penalty of perjury that his debts consisted primarily of consumer debt.  This

characterization of the debt was buttressed by the fact that the Debtor completed Form 122A-1 and Form 122A-2 upon the filing of his case.[1]

On April 29, 2019, the United States Trustee ("U.S. Trustee") filed a statement of presumed abuse pursuant to 11 U.S.C. § 707(b)(2) and, thereafter, on May 28, 2019, filed the instant *Motion to Dismiss Case Pursuant to 11 U.S.C. §§ 707(b)(1), (b)(2) and (b)(3)*. In her motion, the U.S. Trustee requests that this case be dismissed pursuant to § 707(b)(1) asserting that the debts in this case are primarily consumer in nature and a presumption of abuse as defined by § 707(b)(2) arises which has not been sufficiently rebutted by the Debtor. Alternatively, the U.S. Trustee maintains that even if there is no presumption of abuse as defined by subsection (b)(2), the case should still be dismissed as an abusive filing pursuant to § 707(b)(3) based on the totality of the circumstances.

In response the Debtor filed an *Affidavit to Rebut Presumption of Abuse* ("Affidavit") (ECF Doc. #17) along with a *Memorandum of Law in Opposition of Motion to Dismiss* ("Objection") (ECF Doc. #24). The Debtor asserts that the Motion to Dismiss should be denied because the U.S. Trustee has failed to establish that his obligations are "primarily" consumer debts as required by § 707(b)(1). Specifically, the Debtor argues that because his student loans are *business* debts, his total amount of consumer debt constitutes less than 50% of his total debt and, therefore § 707(b)(1) does not apply.[2]

---

[1] According to the instructions to Form 122A-1, a debtor who does not believe that his or her debts consist primarily of consumer debt may complete and file a *Statement of Exemption from Presumption of Abuse Under § 707(b)(2)* (Official Form 122A-1 Supp). No such statement was filed in this case

[2] The courts have taken various approaches when determining whether a debtor has "primarily" consumer debt. A majority of courts that have considered this issue have concluded that a debtor has primarily consumer debt when more than fifty percent of the dollar amount owed is consumer debt. *Stewart v. U.S. Trustee (In re Stewart)*, 175 F.3d 796, 808 (10th Cir. 1997); *In re Kelly*, 841 F.3d 912, 913 (9th Cir. 1988). A minority of courts have held that "the question of whether debtors have primarily consumer debts should be evaluated in terms of both the dollar amount and *number* of consumer debts." *In re Johnson*, 115 B.R. 159, 162 (Bankr. S.D. Ill. 1990) (Meyers, J.) (emphasis added). *See also In re Restea*, 76 B.R. 728, 735 (Bankr. D.S.D. 1987). In his Affidavit, the Debtor avers

The parties have stipulated that if the Court determines that the Debtor's student loan obligations constitute consumer debt, not only does the presumption of abuse arise, but also that the totality of the circumstances dictate that this case should either be converted to Chapter 13 or dismissed pursuant to 11 U.S.C. §§ 707(b)(1), (b)(2) and (b)(3)(B). *See* Joint Stipulation, ¶¶ 22, 23. Accordingly, the only issue before this Court is whether the debtor's student loan debt constitutes a consumer debt under 11 U.S.C.§101(8).

## DISCUSSION

Section 707(b) was initially added to the Bankruptcy Code in 1984 in response to creditors' complaints that debtors who could afford to pay their debts through Chapter 13 were, instead, discharging them "by casual resort to Chapter 7." *In re Stewart*, 201 B.R. 1002 (Bankr. N.D. Okla.1996) ("*Stewart I*"). This section provides in pertinent part:

> (b) (1) [T]he court, on its own motion or on a motion by the United States trustee. . . or any party in interest may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title if it finds that the granting of relief would be an abuse of the provisions of this chapter. . . .
>
> (2) (A) (1) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of-
>
> > (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000[1], whichever is greater; or
> >
> > (II) $10,000.

11 U.S.C. § 707(b)(2)(A)(i). If the presumption of abuse does not arise under § 707(b)(2), the court shall consider whether the totality of the circumstances of the debtor's financial situation

---

[1] that his consumer debts total $42,688.19 and his non-consumer debts, including taxes, student loans, and medical bills, total $45,862.00. Affidavit, ¶ 6.

demonstrates abuse. 11 U.S.C. § 707(b)(3).[3]   The burden of proof is on the movant to support a

motion under § 707(b) by a preponderance of the evidence.  *Palmer v. Laying*, 559 B.R. 746, 749

(D. Colo. 2016).

"Consumer debt" is defined under 11 U.S.C. §101(8) as "debt incurred by an individual

primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). Consumer debt, for

purposes of 707(b), "serves to direct the Court's attention to a type of bankruptcy case which is

especially liable to abuse and especially deserving of review." *Stewart I* at 1004.  Unfortunately,

however, the Code offers no guidance as to what constitutes a "personal, family or household

purpose."  Consequently, the courts that have addressed this issue in the context of student loans

have reached varying conclusions.

The different approaches taken by the courts are illustrated in the *Stewart* line of cases

from the Tenth Circuit. In the *Stewart* cases, the debtor filed a Chapter 7 petition in which he

sought to discharge approximately $520,000 in student loan debt which the debtor incurred while

attending college and medical school.  *Stewart I*, 201 B.R. at 1003.  This amount included a

$320,000 loan from the debtor's former in-laws as well as $200,000.00 in loans from

institutional lenders.  *Id.*  These obligations exceeded more than half of the debtor's total debt.

While the debtor borrowed the funds partly to pay for tuition and other "direct" educational

expenses, the loans were largely used to pay for his family's normal living expenses during his

long period of education, as well as for the debtor's domestic support obligations after his

---

[3] In considering . . . whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in paragraph (2)(A)(i) does not arise or is rebutted, the court shall consider--
    (A) whether the debtor filed the petition in bad faith; or
    (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

divorce.  *Id.*  The United States Trustee moved to dismiss the debtor's case as an abusive filing

pursuant to 11 U.S.C. § 707(b).  The debtor countered that his student loan obligations were not

"consumer debts" and, therefore, § 707(b) was inapplicable.

In dismissing the debtor's case, the bankruptcy court reviewed the language of § 101(8)

and concluded that student loans, as a general rule, are consumer debts, regardless of whether the

loan proceeds were used to pay tuition or living expenses.  The court reasoned:

> It makes little difference whether student loan funds are used 'directly' to pay
> tuition or 'indirectly to pay living expenses during a period of schooling:  either
> way, the money is used to enable the debtor to acquire further education.  No one
> forces a debtor to incur student loans; such loans are incurred on debtor's own
> initiative, at his option, in hopes of enhancing those most personal of qualities, the
> functioning of his own mind and his own hands, and thereby benefitting himself,
> his family and his household for the rest of his life.  Such intangible benefits,
> acquired with creditors' money, are assimilated to the debtor's own person, and
> cannot be conserved as security for payment of the debt.  But if the debtor's
> higher education gains him a higher salary, he can keep that benefit to himself,
> especially if he uses bankruptcy to cancel his creditors' right to use *in personam*
> debt collection methods.  In effect, the student borrower gets "personal" benefits
> while avoiding "personal payment."

*Stewart I* at 1004.

In its analysis, the *Stewart I* court declined to employ a strict "profit motive test" in

determining whether student loans constituted consumer debt.[4]  While acknowledging that profit

motive was a relevant consideration, the court concluded that it was not necessarily decisive.

As the court explained:

> Few human activities are entirely innocent of a profit motive; and it is 'perverse…
> [to] credit Congress... with enacting § 707(b) with the specific design that it apply

---

[4] Under the profit motive test, the courts examine the debt in question and "generally ascribe a business purpose,
rather than a personal, family or household purpose to debts which are incurred 'with an eye toward profit' and
which are 'motivated for ongoing business requirements.'"  *Aspen Skiing Co. v. Cherrett (In re Cherrett)*, 523 B.R.
660, 669 (9th Cir. BAP 2014).  A number of courts have used this approach in analyzing the character of a debtor's
student loans.  *See In re Booth*, 858 F.2d 1051, 1054-1055 (8th Cir. 1988); *In re Kelly*, 841 F.2d 908, 913 (9th Cir.
1988); *In re Nolan*, 140 B.R. 797, 800-801 (Bankr. D. Colo. 1992).

to almost no one.' *Higginbotham*, 111 B.R. p. 960 . . .  Nothing is more intimately personal than the debtor's own education—what goes, so to speak, between the debtor's own ears.  Debts for loans which further that 'personal' endeavor, whether the source of the money be institutional or intra-family, come within the literal terms of 'consumer debt' as defined in § 101(8), and within probably Congressional intent in employing such term(s) in § 707(b).

*Stewart I,* 201 B.R. at 1004-1005.  *See also Millikin*, 2007 WL 6260855 at *4.

The Bankruptcy Appellate Panel for the Tenth Circuit affirmed the bankruptcy court's conclusion that the loans at issue were consumer debt but declined to adopt the bankruptcy court's reasoning that all student loan debt should generally be considered consumer debt.  *In re Stewart*, 215 B.R. 456 (10th Cir. BAP 1997) ("*Stewart II*").  Instead, the appellate panel concluded that the primary purpose of the loan should be determinative because "there may be circumstances in which the debtor can demonstrate that the student loan was incurred primarily as a business investment, albeit an investment in herself or himself, much like a loan incurred for a new business." *Id.* at 465. As the panel noted, courts have taken differing approaches in determining whether a debtor has "primarily" consumer debt.  However, the *Stewart II* panel concluded that statutory threshold was satisfied if more than one-half of the dollar amount owed by the debtor was consumer debt. *Id.* at 466.[5]

Based on the record in *Stewart I*, the appellate panel concluded that the loan from the debtor's in-laws was clearly consumer debt because the loan proceeds were used primarily for things like house payments, groceries, childcare and family vacations. *Id.*  However, the institutional loans were more problematic because they had a "dual purpose," in that they were used to pay both the debtor's educational costs and his living expenses. *Id*. at 466.  Because the

---

[5] The Court notes that other courts, including this one, have considered the number of consumer debt in addition to the amount of the debt.  *See In re Johnson*, 115 B.R. 159,162 (Bankr. S.D. Ill. 1990) (Meyers, J.).

panel was unable to discern the "primary" purposes of these loans, it concluded that there was no clear error in the bankruptcy court finding the loans were consumer debt.

On appeal, the Tenth Circuit affirmed the lower courts and concluded that the debtor's Chapter 7 filing constituted a substantial abuse pursuant to 11 U.S.C. § 707(b). Like the lower courts, the Tenth Circuit apportioned the total debt into consumer and non-consumer components. Examining the debt through the prism of the profit motive test, the court concluded that the inter-family $320,000 in loans from the debtor's former in-laws clearly constituted consumer debt because the proceeds were predominately used to support the debtor's family, even during periods when he was not attending college. *In re Stewart (Stewart III)*, 175 F.3d 796, 806-07 (10th Cir. 1999). As to the remaining student loan obligation, the court noted that there was nothing in the record evidencing the actual amount that the debtor spent on tuition, books, or other direct educational expenses. *Id.* at 807. However, the record did show that a substantial amount of the student loan funds was used to pay the family's expense and were, therefore, consumer debt. For instance, the debtor acknowledged that of the $100,000 in student loans that he obtained following his divorce, $60,000 of the proceeds were paid to his former spouse for support and $3,000 was paid toward his children's medical expenses. *Id.* Accordingly, the court concluded that because the amount of consumer debt exceeded more than fifty percent of the debtor's total debt, the debts were "primarily consumer debt" for purposes of § 707(b). *Id.* at 808.

Here, the parties advocate different approaches for determining whether student loans should be classified as consumer debt. The U.S. Trustee urges this Court to adopt a *per se* rule that student loans *always* constitute consumer debt. Although acknowledging that no courts have yet taken this position, she argues that such an approach would lend clarity to the parties and

7

would eliminate the need to employ judicially created tests, such as the profit motive test, which, essentially, add language to § 108(d).  Alternatively, the U.S. Trustee suggests that if the Court chooses not to adopt a *per se* rule, that it employ the profit motive test as it was applied by the Tenth Circuit in *Stewart III*.

 For his part, the Debtor argues that the determinative factor should be the debtor's motivation at the time that the debt was incurred, and, if the student loan was obtained in order to improve the debtor's future financial situation, it should be characterized as a business or non-consumer debt.  Specifically, the Debtor maintains that he went to college "for the purpose of obtaining an education, upward mobility, and more income." Objection (ECF Doc. 24) p. 3-4. He asserts that this "business investment in himself" evidences a profit motive and, accordingly, the student loans should be deemed non-consumer debts. *Id.* at 4.

While a *per se* rule certainly offers ease of application, this Court declines to adopt such an approach.  Even courts such as *Stuart I* and *In re Millikan*, 2007 WL 6260855 (Bankr. S.D. Ind. 2007), which concluded that student loans should *generally* be considered consumer debt, were reluctant to employ a blanket rule because "unusual facts or factors" could necessitate a different result. *Stewart I*, 201 B.R. at 1005.  As the court noted in *In re Rucker*, 454 B.R. 554, 557 (Bankr. M.D. Ga. 2011), while education certainly confers a substantial personal benefit on the recipient, there may be situations where this personal benefit is not the "motivating factor for incurring the loan or the primary result of receiving an education."

Similarly, the position advanced by the Debtor—that the Court focus solely on a debtor's motivation for incurring the student loan—is equally problematic.  In support of this approach, the Debtor cites *Palmer v. Laying*, 559 B.R. 746 (D. Colo. 2016).  In that case, the debtor incurred significant student loan debt in order to obtain a doctorate in business administration.

*Id.* at 755.   In the debtor's subsequent Chapter 7 case, the bankruptcy court granted the United States Trustee's motion to dismiss pursuant to 11 U.S.C. § 707(b). The bankruptcy court concluded that the debtor had pursued his doctorate "for the personal purpose of fulfilling a lifelong goal" and, therefore, the educational loans constituted consumer debt.  *In re Palmer*, 542 B.R. 289, 298 (Bankr. D. Colo. 2015), *rev'd Palmer v. Laying*, 559 B.R. 746 (D. Colo. 2016).

On appeal, the district court reversed, finding that the debtor had, instead, incurred the student loans with a profit motive.  *Palmer v. Laying*, 559 B.R at 756-57.  In support of its decision, the court relied on the debtor's testimony which indicated that he did not enroll in the doctorate program in order to begin a new career.  Instead, the debtor wanted to gain additional business knowledge so that he could ultimately own his own business.  *Id.*  Specifically, the debtor wanted to purchase the company for which he was working.  *Id.*  Relying, in part, on the reasoning by the bankruptcy appellate panel in *Stewart II*, the court opined:

> Although this Court does not completely endorse the BAP's approach to student loans and consumer debt, the Court agrees with the BAP that the primary purpose for which the debt was incurred must be determinative.  The Court further agrees, *at least under the circumstances of this case*, where [the debtor] incurred the student loan debt while employed, that non-consumer debs include those incurred primarily as a business investment in oneself.

*Id.* at 750 (emphasis in original).  It went on to explain that under the profit motive test,

> profit *motive* does not mean profit *realized*.  Motive necessarily looks to the reasons behind a course of action, it does not suggest that the course of action need come to fruition.  Thus, provided that a debtor can show that he or she took steps to realize the potential of his or her education, there is no reason why such evidence would not show that the debtor had a profit motive in incurring his or her student debt.

*Id.* at 754.

While this Court agrees that the purpose for which the loan was incurred should be determinative, it declines to adopt a profit motive approach.  Congress defined "consumer debt"

9

in § 101(8) as "debt incurred by an individual for a personal, family or household purpose." It

did *not* define it as a debt incurred by an individual with no profit motive. "Courts should be

cautious of replacing the terms of statutes, and the sometimes complex legislative considerations

which they encapsulate, with oversimplified judicial catch-phrases like 'profit motive.' *Stewart*

*I*, 201 B.R. 1005.

Further, under a broad application of the profit motive test, every student loan,

potentially, could be characterized as non-consumer debt. As the Court explained in *In re*

*Millikan*, 2007 WL 6260855 at *6:

> The difficulty with the profit motive test is that it places in the hands of the debtor
> the means to characterize the debt. If a debtor testified that he or she had attended
> school for humanitarian reasons or just for the personal satisfaction of learning,
> the student loan could be considered a consumer debt. If the debtor testified that
> he or she had attended school primarily to earn a large income, the *same* loan
> could now become a non-consumer debt. The result of applying the 'profit
> motive test' allows a debtor to tailor his or her testimony to determine if a debt is
> to be considered a consumer or non-consumer debt.

*Id.* (emphasis in original). *Any* debtor who testified that he or she incurred student loans with the

hope of improving their economic future could be found to have had a profit motive. A test that

focuses solely on the aspirations and motivations of the debtor could, effectively, supplant the

actual language of § 101(8) and "become[ ] an exception that swallows the rule." *In re Palmer*,

542 B.R. 289 at 296, *rev'd Palmer v. Laying*, 559 B.R. 746 (D. Colo. 2016).

Even if this Court were to employ a profit motive approach, the Debtor's reliance on

*Palmer*, under the fact of this case, is misplaced. The unequivocal testimony in *Palmer*

evidenced that the debtor pursued his doctorate because he wanted to *own* a specific business and

took classes designed to further that goal. There is simply no evidence, either in the Debtor's

10

schedules or in the Joint Stipulated Facts, that the Debtor incurred his student loans for any business purpose.

Rather than adopting either a *per se* rule or the profit motive test, this Court believes that the appropriate way to determine whether a particular student loan constitutes consumer debt is to consider the totality of the circumstances on a case by case basis.  While factors such as the debtor's motive for incurring the debt may be relevant consideration, the *purpose* of the loan is determinative. This approach is consistent with the language of Section 101(8), which requires that the court consider the purpose for which the debt was incurred.  Further, "if a debt is incurred partly for business purposes and partly for personal, family or household purposes, the term 'primarily' in the definition suggests that whether the debt is 'consumer debt' should depend upon which purpose predominates.  Presumably, this determination would normally turn on the purpose for which most of the funds were obtained."  *Stewart II*, 215 B.R. at 465 (*quoting* 2 COLLIER ON BANKRUPTCY ¶101.08, at 101-47 (Lawrence P. King, ed., 15th ed. Rev. 1997)).

In the case at bar, there is no evidence as to the Debtor's primary purpose for obtaining the student loans.  Although the Debtor asserts in his brief that he "went to college for the purpose of obtaining an education, upward mobility, and more income," he offered no testimony or other evidence to substantiate this statement.  According to the stipulated facts, the Debtor attended both Hannibal-LaGrange College and Southern Illinois University-Edwardsville, but never received a degree from either institution.  He was not asked to attend college by an employer, nor was he operating a business at the time that the student loans were incurred. While there is no indication in the record as to what the Debtor studied while attending college, he is currently employed as a warehouse technician with Sherwin Williams and has been working for that company for approximately four years.  From these scant facts, the Court is

unable to discern any business or non-consumer purpose for incurring the loans in question. Accordingly, the Court concludes that the Debtor's student loans are consumer debts as defined by 11 U.S.C. § 101(8).

Ordinarily, the Court's next inquiry under § 707(b) would be whether the granting of Chapter 7 relief in this case would constitute a substantial abuse. However, the parties previously agreed that if this Court characterized the Debtor's student loans as consumer debt, this case should either be converted to a proceeding under Chapter 13 or dismissed pursuant 11 U.S.C. §§707(b)(1), 707(b)(2) and 707(b)(3)(B). *See* Joint Stipulation (ECF Doc. #23), ¶22. Therefore, no further analysis is necessary and this case shall either be converted or dismissed.

## CONCLUSION

Based on the foregoing discussion, the U.S. Trustee's motion pursuant to 11 U.S.C. §§707(b)(1), 707(b)(2) and 707(b)(3)(B) is granted. The Debtor shall file a Motion to Convert his case to a proceeding under Chapter 13 within fourteen (14) days of the entry of this Opinion and accompanying Order, If the Debtor fails to file a Motion to Convert within the allotted time, this case shall be dismissed without further notice or hearing.

A SEPARATE ORDER SHALL ENTER THIS DATE.

ENTERED: January 29, 2020

/s/ Laura K. Grandy
_____
UNITED STATES BANKRUPTCY JUDGE